AUGUST GERMOLUS v. PETER SAUSSER.[1]

May 3, 1901.

Nos. 12,613—(69)

Assault and Battery.

In a civil action for an assault and battery, it is *held*:

Use of Force.

1. To justify the use of force on the ground of self-defense, it is not essential to show that in fact it was necessary to use such force in order to protect the defendant from imminent personal injury; for it is sufficient if it appears that the necessity was real or apparent.

Self-Defense.

2. But the mere belief of the defendant that it is necessary to use force is not alone sufficient to make out a case of self-defense; for the facts as they appear to him at the time must be such as reasonably to justify the belief.

Instruction Immaterial.

3. Upon the defendant's own testimony he was not, as a matter of law, justified in striking the plaintiff; hence it is immaterial whether or not the trial court correctly instructed the jury as to the law of self-defense.

Exemplary Damages.

4. The court did not err in its instructions as to exemplary damages.

Action in the district court for Norman county to recover $5,000 damages for an assault committed by defendant. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for $1,100. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Moen & Matson* and *Miller & Miller*, for appellant.

*Calkins & Calkins*, for respondent.

START, C. J.

Action to recover damages for personal injuries sustained by the plaintiff by reason of an assault and battery perpetrated upon him November 21, 1899, by the defendant. The defense was that

[1] Reported in 85 N. W. 946.

the act was done in self-defense. Verdict for the plaintiff for $1,100, and the defendant appealed from an order denying his motion for a new trial.

All of the assignments of error, which are well assigned, relate to exceptions to the charge of the trial court to the jury. The evidence on the part of the plaintiff tended to show that the defendant made an unprovoked assault upon him, and struck him over the head with the heavy end of a whip stock, whereby the plaintiff was knocked senseless, and sustained serious injuries. The evidence also tends to show that there had been some words between the parties growing out of the fact that the plaintiff, who had been plowing a field lying along the highway, had plowed within the limits of the highway. The plaintiff had stopped his team, and was standing by the side of his plow, some ten rods from the highway, when the defendant struck him. The defendant's own testimony was to this effect:

He [plaintiff] was plowing and when he saw me driving on the highway he stopped his team, and called to me to come over, and repeated the call seven or eight times. I stopped my team, and asked him what he wanted. He said, "Come over this way." I got off the wagon, took my coat off, as it was too heavy (this was November 21st), and went over to the plaintiff, and asked him what he was calling to me for; and he swung his whip around, hitting me on the arm, and I jerked it out of his hand, and hit him with it, and then he let himself drop. I had to hit him to protect myself. I had the whip near the stock, and I swung it over and gave it to him.

On his cross-examination he further testified that:

"I said nothing after I left the wagon until I got close to him. Q. What was the first that you said? A. I asked him what he wanted. Q. What did he say? A. He said nothing. Q. What did you say then? A. I said, 'You better stop that.' Q. Stop what? A. Calling me all the time. I did not like being called for nothing. Q. It made you mad, and you went down there? A. Of course, I did not like it, and went down there. I did not get mad until he struck his whip at me. He did not say anything,—not a word."

He gave further testimony, both upon his direct and cross-examination, but none that materially modifies his version of the

encounter as stated in the part of his testimony we have referred to. It also appears that the defendant is a man fifty-five years old, weighing one hundred eighty pounds, and that his wife and son were in the wagon at the time. The son was twenty-four years old, weighing one hundred sixty pounds, and followed his father when he started to go to the plaintiff, but the defendant testified that he did not know this fact until after he had struck the plaintiff. The trial court gave to the jury, with others, the instructions following:

"Now, in this case, you are to consider, in the first place, whether any element of self-defense enters into it. According to the testimony of the defendant himself, even if that were true, that the plaintiff struck at him with a whip stock, was it then necessary for him, to defend himself, to jerk it out of the plaintiff's hands, and then strike the plaintiff with it? He was only justified in doing that if it was necessary for his own protection, —in his own self-defense."

"There is no full defense made out in this case, unless the defendant has established by a preponderance of the evidence that the battery committed upon the plaintiff, as admitted, was necessary for his own self-protection, and to prevent the plaintiff from further battering him."

"If you find that the assault and battery was wilful and malicious on the part of the defendant, you may, in assessing damages, not only give actual damages, as I have stated before, but you may give what is called 'punitive damages,' or 'exemplary damages,' for the purpose of preventing the defendant and others from committing such wilful and malicious assaults in the future."

The defendant excepted to the giving of the instructions, and we assume, without so deciding, that the exceptions were sufficient.

It is the contention of the défendant that the first two instructions given were erroneous, in that they, in effect, made his right of self-defense depend upon an actual necessity for the use of force in order to protect himself, instead of upon the then apparent necessity of the situation, and withdrew from the jury the consideration of the question whether at the time the defendant entertained an honest and reasonable belief that it was necessary to use the force which he did use in order to protect himself. The rule as to self-defense is the same in civil and criminal ac-

tions. The rule is this: An act, otherwise criminal, is justifiable when it is done to protect the person committing it, or another whom he is bound to protect, from imminent personal injury, the act appearing reasonably necessary to prevent the injury, nothing more being done than is reasonably necessary. G. S. 1894, § 6308. This does not require that the necessity for doing the act must be actual; for it is sufficient if there is either a real or apparent necessity for so doing. But the mere belief of a person that it is necessary to use force to prevent an injury to himself is not alone sufficient to make out a case of self-defense, for the facts as they appear to him at the time must be such as reasonably to justify such belief.

It follows that the instructions in this case were not strictly accurate, but the error was without prejudice; for, upon the defendant's own testimony, we hold as a matter of law that he was not justified in beating the plaintiff. To hold otherwise would be a reproach to the administration of justice; for, accepting the defendant's own statement of what occurred, there was neither a real nor an apparent necessity for knocking the plaintiff down after he had been disarmed. Nor were the facts, viewed from any standpoint, such as reasonably to justify the defendant in believing that there was any such necessity.

The defendant's last claim is that the court erred in its instruction as to exemplary damages. The charge was correct as far as it went, and the court did not err in giving it; for the evidence on the part of the plaintiff, if believed by the jury, would justify a verdict, including reasonable exemplary damages. If the defendant desired a fuller statement of the law as to such damages, he should have requested it.

Order affirmed.